**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DOWN TO EARTH ORGANICS, LLC,

                    Plaintiff,

     v.

ZAC EFRON, DARIN OLIEN, NETFLIX, INC.
THE NACELLE COMPANY, NINJA RUNNIN'
WILD PRODUCTIONS, INC. and JOHN DOES 1-
10 INCLUSIVE,

                    Defendants.

**Civil Action No.: 7:22-CV-06218-NSR**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
(310) 598-4150

Counsel for Defendants,
Zac Efron, Darin Olien, The Nacelle Company,
and Ninjas Runnin' Wild Productions, Inc.

**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the America, 21st Floor
New York, New York 10020
(212) 489-8230

Counsel for Defendant,
Netflix, Inc.

On the Brief:

    David Aronoff (admitted pro hac vice)
    Joshua Bornstein (admitted pro hac vice)

    Rachel Strom
    Amanda B. Levine

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   FACTUAL BACKGROUND ................................................................. 2

    A.    Plaintiff's Trademarks ................................................................. 2

    B.    Defendants' Series ................................................................. 4

    C.    "Down to Earth" ................................................................. 6

    D.    Plaintiff's Complaint ................................................................. 6

III.  LEGAL STANDARD UNDER RULE 12(b)(6) ................................................................. 7

IV.   THE ELEMENTS OF PLAINTIFF'S CLAIMS ................................................................. 8

V.    LEGAL ARGUMENT ................................................................. 9

    A.    THE SNACK BAR MARK LACKS PRIORITY AS A MATTER OF LAW ....... 9

    B.    PLAINTIFF'S FEDERAL CLAIMS ARE BARRED UNDER *ROGERS v. GRIMALDI* AND CASES FOLLOWING *ROGERS* ................................................................. 9

        1.    The Title "Down to Earth with Zac Efron" is Artistically Relevant ......... 11

        2.    The Title "Down to Earth with Zac Efron" Is Not Explicitly Misleading ................................................................. 12

        3.    Plaintiff's Claims are Not Saved by Footnote 5 of *Rogers* ................................................................. 14

            a.    Plaintiff's Podcast Mark Is Weak ................................................................. 17

            b.    The Parties' Marks are Dissimilar and Their Goods Are Not Proximate ................................................................. 19

            c.    The Remaining *Polaroid* Factors Weigh in Defendants' Favor ... 21

    C.    PLAINTIFF'S STATE LAW CLAIMS ARE ALSO BARRED BY *ROGERS* ... 23

VI.   CONCLUSION ................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
__ F. Supp. 3d __, 2022 WL 2316181 (S.D.N.Y. 2022) ........................................8, 17

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*,
277 F. Supp. 2d 356 (S.D.N.Y. 2003)........................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................7, 21

*Baugh v. CBS, Inc.*,
828 F. Supp. 745 (N.D. Cal. 1993) ............................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007)..............................................................................................7, 21

*Blue Trees Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004)........................................................................................3

*Brown v. Electronic Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ...........................................................10, 11, 12, 13

*Champion v. Moda Operandi, Inc.*,
561 F. Supp. 3d 419 (S.D.N.Y. 2021)......................................................................16

*Cummings v. Soul Train Holdings LLC*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014)........................................................................10

*DiFolco v. MSNBC Cable LLC*,
622 F.3d 104 (2d Cir. 2010)........................................................................................3

*Felix Cat Prods. Inc. v. New Line Cinema*,
No. CV 99-9339, 2000 WL 770481, at *1 (C.D. Cal. Apr. 28, 2000).......................4

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
964 F.Supp. 956 (M.D.N.C. 1997) ............................................................................4

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011)........................................................................................7

*Gayle v. Hearst Commc'ns, Inc.*,
No. 19 CV 4699-LTS-DCF, 2021 WL 293237 (S.D.N.Y. Jan. 28, 2021) ..............16

*Girl Scouts of U.S. v. Bantam Doubleday Dell Pub. Grp., Inc.*,
996 F.2d 1477 (2d Cir. 1993)..........................................................................15, 20

*Girl Scouts of the United States of Am. v. Boy Scouts of Am.*,
No. 18 CIV. 10287 (AKH), 2022 WL 1047583 (S.D.N.Y. Apr. 7, 2022) ............................21

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008)........................................................................................8

*Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*,
906 F. Supp. 2d 96 (E.D.N.Y. 2012) .........................................................................................9

*Hasbro Inc. v. Lanard Toys, Ltd.*,
858 F.2d 70 (2d Cir. 1988)........................................................................................................19

*Hidden City Philadelphia v. ABC, Inc.*,
No. CV 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019)....................................3, 10, 13, 15

*ITC Ltd. v. Punchgini, Inc.*,
482 F.3d 135 (2d Cir. 2007).......................................................................................................9

*Jahr Printing & Pub. Co. v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993)...................................................................................................19

*Jumpitz Corp. v. Viacom Int'l, Inc.*,
No. 09CV1063-MMA (WVG), 2010 WL 11684784 (S.D. Cal. May 13, 2010)......................4

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004)..................................................................................................................21

*Lemme v. Nat'l Broad. Co., Inc.*,
472 F. Supp. 2d 433 (E.D.N.Y. 2007) .............................................................15, 18, 22, 23

*Lopez v. Nike*,
20-CV-905(PGG)(JLC), 2021 WL 128754 (S.D.N.Y. Jan. 14, 2021) .....................................6

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012).............................................................................. *passim*

*Medina v. Dash Films, Inc.*,
No. 15-CV-2551 (KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016)........................ *passim*

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961)............................................................................................ *passim*

*Rebellion Developments Ltd. v. Stardock Entm't, Inc.*,
No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013) ..................................................8

*RiseandShine Corp. v. PepsiCo, Inc.*,
41 F.4th 112 (2d Cir. 2022) ................................................................................15, 17, 19, 21

*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*,
894 F. Supp. 2d 288 (S.D.N.Y. 2012)........................................................................................4

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)................................................................. *passim*

*Santos v. Hecht*,
    No. 06CV783(JFB)(MLO), 2006 WL 2166850 (E.D.N.Y. July 31, 2006).............................4

*Savin Corp v. Savin Grp.*,
    391 F.3d 439 (2d Cir. 2004)................................................................22

*Schad v. Borough of Mt. Ephraim*,
    452 U.S. 61 (1981).........................................................................9

*Syler v. Woodruff*,
    610 F. Supp. 2d 256 (S.D.N.Y. 2009)....................................................14

*Telebrands Corp. v. Del Labs., Inc.*,
    719 F. Supp. 2d 283 (S.D.N.Y. 2010)....................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................7

*Twentieth Century Fox TV. v. Empire Distribution, Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ..................................................12, 13, 15

*Twin Peaks Prods., Inc. v. Pubs. Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)................................................14, 15, 16, 23

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
    403 F. Supp. 3d 361 (S.D.N.Y. 2019)....................................................17

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) .................................................15, 23

**Statutes**

Lanham Act......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................ *passim*

Fed. R. Evid. 201(b)..............................................................................4

Lynn M. Jordan & David M. Kelly, *Another Decade of Rogers v. Grimaldi:*
    *Continuing to Balance the Lanham Act with the First Amendment Rights of*
    *Creators of Artistic Works*, 109 TRADEMARK REP. 833 (2019) .............................15

Manohla Dargis, "*Those Cheekbones! That Wind-Swept Hair! OMG, It's Zac*
    *Efron!*," NEW YORK TIMES (April 16, 2009)...............................................1

## I.    PRELIMINARY STATEMENT

In this baseless action, plaintiff Down to Earth Organics, LLC ("Plaintiff"), a company that primarily makes infused iced tea drinks, alleges that it has a monopoly on the phrase "down to earth" – a saying so ubiquitous it even has a dictionary definition – and that Defendants[1] supposedly violated the Lanham Act when they produced and distributed their documentary series titled "Down to Earth with Zac Efron" (the "Series").[2]  Specifically, Plaintiff contends that the title of the Series purportedly infringes its trademarks in connection with: (1) fruit and herb-infused bottled iced teas (Cmpt. ¶ 18); (2) clothing (*id.* ¶ 19); (3) snack bars (*id.* ¶ 20); and (4) podcast services (*id.* ¶ 21).  But the First Amendment prohibits exactly what Plaintiff seeks to do here – *i.e.*, "staking [its] claim to a pre-existing term and then attempting to remove all expressive, non-explicitly-misleading uses from public circulation." *Medina v. Dash Films, Inc.*, No. 15-CV-2551 (KBF), 2016 WL 3906714, *6 (S.D.N.Y. July 14, 2016) (granting motion to dismiss).

Plaintiff's Complaint alleges five claims for relief: (1) False Designation of Origin under 15 U.S.C. § 1125(a); (2) Federal Trademark Infringement under 15 U.S.C. § 1114; (3) New York Unfair Competition; (4) Violation of New York's Deceptive and Unfair Trade Practices Act; and (5) Unjust Enrichment.  All of these claims, however, are barred by the well-known "*Rogers* test,"

---

[1] The term "Defendants" herein collectively refers to defendants Zac Efron ("Efron"), Darin Olien ("Olien"), Netflix, Inc. ("Netflix"), The Nacelle Company ("Nacelle"), and Ninjas Runnin' Wild Productions, Inc. ("Ninjas").  The Series is produced by Nacelle and Ninjas, it is distributed by Netflix, and it stars Efron and Olien.

[2] Efron is a well-known actor who is alleged in Plaintiff's Complaint to be the "star" of the Series.  Cmpt., ¶ 26.  He is especially noted for starring in the "High School Musical" television series and motion pictures.  The NEW YORK TIMES once described him as enjoying "ubiquity and supernova stardom in certain shrieking demographic circles…."  Manohla Dargis, *Those Cheekbones! That Wind-Swept Hair! OMG, It's Zac Efron!*," NEW YORK TIMES (April 16, 2009), *available at* https://www.nytimes.com/2009/04/17/movies/17seve.html (last visited Sept. 9, 2022).

as set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Under the *Rogers* test, a plaintiff cannot succeed on a Lanham Act or pendent state law claim based on the title of an artistic work unless the title: (1) has no artistic relevance to the underlying work whatsoever or (2) explicitly misleads as to the source or the content of the work. *Id.* at 999.

In this case, both prongs of the *Rogers* test are easily satisfied by Defendants. The title "Down to Earth with Zac Efron" is artistically relevant to the Series because it follows defendant Efron as he travels across the Earth to explore environmental conservation efforts while making himself and this topic accessible to viewers – *i.e.*, Efron is getting "down" with the Earth and is, himself, "down to earth." Likewise, the second prong of *Rogers* is satisfied because the title of the Series makes no explicit references that could mislead the public into believing that the Series was created or authorized by Plaintiff. The title simply uses the common phrase "down to earth," which existed long before Plaintiff registered its marks and is not, in any way, innately tied to Plaintiff's products. In any event, the title of the Series explicitly dispels any likelihood of consumer confusion with the additional phrase, "**with Zac Efron**."

Courts in the Second Circuit and around the country, recognizing that allowing lawsuits like this one to proceed would chill free speech, have not been hesitant to dismiss such cases on upfront motions to dismiss. That is precisely the result mandated here. For the reasons set forth below, Plaintiff's frivolous Complaint should be dismissed with prejudice at the pleading stage.

## II.    FACTUAL BACKGROUND[3]

### A.    Plaintiff's Trademarks

Plaintiff asserts that it holds registered trademarks in the mark "Down to Earth" for use with "clothing" (Cmpt. ¶¶ 18-19 and Ex. 1 ("the Clothing Mark")), "fruits and nuts and snack bars"

---

[3] The "facts" are taken from the Complaint for purposes of this motion only and are not admitted.

(*id*. ¶ 20 and Ex. 2 ("the Snack Bar Mark")), and "podcasts" (*id*. ¶¶ 6-7, 18 and 21-23 and Ex. 3 ("the Podcast Mark")).  Plaintiff also alleges that it uses the "Down to Earth" trademark in association with the sale of fruit and herb-infused bottled iced teas ("the Iced Tea Mark"), but it alleges no trademark registration in that product category.  *Id*. ¶¶ 6, 18.  Moreover, the Complaint affirmatively alleges that Plaintiff lacks priority as to its Snack Bar Mark – as the Series was first broadcast on July 10, 2020 (Cmpt., ¶ 27), but Plaintiff's Trademark Registration for the Snack Bar Mark was not issued until December 13, 2021, based on a claimed first use in commerce on October 22, 2021.  *Id*., Ex. 2.  Hence the Snack Bar Mark could not have been infringed.

As for Plaintiff's 65 podcasts ("the Podcasts") (*id*., ¶ 23), they are incorporated by reference in the Complaint and thus can be considered by the Court in determining this Motion under Rule 12(b)(6) – and they also can be found on Plaintiff's website.[4]  *See, e.g., Medina*, 2016 WL 3906714, at *1 and fn.2 (taking judicial notice of defendants' eight episode video work incorporated by reference in complaint in granting Rule 12(b)(6) motion);[5] *see also* Declaration of David Aronoff ("Aronoff Decl."), ¶ 2 and Ex. "A."  Judicial notice should also be taken of the more than 50 third-party registrations of various unrelated "Down to Earth" trademarks, some of them in similar product categories (*see* Aronoff Decl., ¶¶ 4-10 and Exs. "C" to "I"), including at

---

[4] Plaintiff's website is available at https://drinkdowntoearth.com/.  However, the Court should note that Plaintiff's website can easily be confused with various other companies using "Down to Earth" trademarks such as "Down to Earth Organic & Natural" (https://www.downtoearth.org/) and "Down to Earth Distributors, Inc." (https://www.downtoearthdistributors.com/).

[5] *See also DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (materials incorporated by reference in complaint can be considered in ruling on motion under Rule 12(b)(6)); *Blue Trees Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004) (same); *Hidden City Philadelphia v. ABC, Inc*., No. CV 18-65, 2019 WL 1003637, at *1 (E.D. Pa. Mar. 1, 2019) (holding "Hidden Philadelphia" videos were properly before court in ruling on Rule 12(b)(6) motion to dismiss title infringement claims under the Lanham Act and state law).

least one such third-party registration of "Down to Earth" as to which Plaintiff unsuccessfully sought cancellation. *Id*., ¶ 11 and Ex. "J" at pp. 2, 16. The U.S. Patent and Trademark Office ("USPTO") records concerning these trademark proceedings are all subject to judicial notice.[6]

### B.    Defendants' Series

Defendants' Series, as a matter of law, is a First Amendment-protected work of entertainment. The Complaint describes the Series as a Netflix show about wellness and travel. *Id*. ¶¶ 25, 27. As the Series is incorporated by reference in the Complaint, it too can be considered by the Court in ruling on this Motion. *See* fn. 5 and accompanying text, *supra*.[7] The Series follows Efron and his co-host, defendant Olien, as they travel around the world to raise awareness about efforts to combat climate change and find sustainable solutions to ecological problems such as

---

[6] Judicial notice is proper of trademark registration materials filed in the USPTO and documents filed in adversarial actions before the USPTO's Trademark Trial and Appeal Board ("TTAB"). *See Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 301 fn.7 (S.D.N.Y. 2012) (citations omitted) (taking judicial notice of a trademark application filed with the USPTO's Trademark Electronic Search System known as TESS); *Telebrands Corp. v. Del Labs., Inc*., 719 F. Supp. 2d 283, 287 fn.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office"); *Santos v. Hecht*, No. 06CV783(JFB)(MLO), 2006 WL 2166850, at *1 fn.1 (E.D.N.Y. July 31, 2006) ("the Court takes judicial notice of the underlying records of the TTAB proceeding"); *see also Jumpitz Corp. v. Viacom Int'l, Inc*., No. 09CV1063-MMA (WVG), 2010 WL 11684784, at *5 fn.8 (S.D. Cal. May 13, 2010) (taking judicial notice of USPTO registry listings containing the word "jump" submitted to show crowded field of same mark).

[7] Alternatively, the Court also can and should take judicial notice of the Series and the Podcasts because they are available to the public and their content is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Felix Cat Prods. Inc. v. New Line Cinema*, No. CV 99-9339 FMC (RCX), 2000 WL 770481, at *1 (C.D. Cal. Apr. 28, 2000) (granting request to take judicial notice of motion picture "Pleasantville" and dismissing trademark, copyright and state law claims under Rule 12(b)(6)); *Food Lion, Inc. v. Capital Cities/ABC, Inc*., 964 F.Supp. 956, 964 fn.5 (M.D.N.C. 1997), *aff'd on other grounds*, 194 F.3d 505 (4th Cir. 1999). Digital copies of the Series and the Podcasts are being lodged with this Court, and identical copies of the Series and the Podcasts are also available, respectively, at https://www.netflix.com/ and https://drinkdowntoearth.com/podcast/.

pollution, poor water quality, and famine. At the time of filing Plaintiff's Complaint, one season of the Series (containing eight episodes) had been released on Netflix. Defendants have, therefore, lodged all eight episodes of Season One of the Series with the Court. *See* Aronoff Decl., Ex. "B."

Each episode of the Series focuses on Efron's and Olien's travels to a different country around the Earth. The length of each episode varies from about 30 to 50 minutes. Nothing in any of the episodes of the Series, however, refers to or relates to Plaintiff or any of its products.

- **Episode One**: In this episode, Efron and Olien travel to Iceland and learn about Iceland's renewable energy efforts. *See* Ex. "B" (Ep. 1 – Iceland).

- **Episode Two**: In this episode, Efron and Olien travel to France and learn about that country's tap water system and its water refinement efforts. *Id*., (Ep. 2 – France).

- **Episode Three**: In this episode, Efron and Olien travel to Costa Rica to visit an eco-village committed to minimizing its environmental footprint. *Id*., (Ep. 3 – Costa Rica).

- **Episode Four**: In this episode, Efron and Olien travel to Sardinia to a visit a small island with a high number to centenarians to learn their secrets to longevity. *Id*., (Ep. 4 – Sardinia).

- **Episode Five**: In this episode, Efron and Olien travel to Lima, Peru to learn about apple growing and potato cryopreservation. *Id*., (Ep. 5 – Lima).

- **Episode Six**: In this episode, Efron and Olien travel to Puerto Rico to explore sustainability options for that region after the devasting impact of Hurricane Maria. *Id*., (Ep. 6 - Puerto Rico).

- **Episode Seven**: In this episode Efron and Olien travel to London, England to learn about London's pollution-reduction efforts. *Id*., (Ep. 7 – London).

- **Episode Eight**: In this episode, Efron and Olien travel deep into the Amazon rainforest where they encounter various indigenous plants with purported medicinal value in need of

conservation. While there, the Woolsey Fire rages in Los Angeles, California near Olien's home reminding the audience of the urgent need for conservation. *Id*., (Ep. 8 – Iquitos).

### C.    "<u>Down to Earth</u>"

The phrase "down to earth," which appears in the Series' title, is a common saying that is so well-known, it has its own entry in the Merriam-Webster Dictionary. *See* "down-to-earth," Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/down-to-earth (last visited Oct. 26, 2022).[8]   According to Merriam-Webster, the phrase is an adjective meaning "practical" or "unpretentious" that has been used since 1922. *Id.*   Additionally, the phrase "down to earth" also has a double meaning as a pun because "down" has a slang definition of being "understanding or supportive of something or someone." *See* "down," Merriam-Webster, *available   at*   https://www.merriam-webster.com/dictionary/down-to-earth ("down" adjective example no. 5.b. is "trying to prove that they were ***down*** with hip-hop culture") (emphasis in original) (last visited Oct. 26, 2022).  Thus, someone who is "down to earth" can also be seen as "supportive" of the earth.  Reflecting the long-standing popularity of this ubiquitous turn of phrase, it has been incorporated in numerous third-party trademark registrations, as was noted above. ***See*** Aronoff Decl., ¶¶ 3-10 and Exs. "C" to "J."

### D.    <u>Plaintiff's Complaint</u>

On July 22, 2022, Plaintiff filed its Complaint herein.  ECF 1.  The Complaint alleges five claims, each of which is based on the purported infringement of all of Plaintiff's alleged registered and unregistered "Down to Earth" trademarks: (1) False Designation of Origin under 15 U.S.C. §

---

[8] This Court can take judicial notice of a dictionary definition on a motion to dismiss. *See, e.g.*, *Lopez v. Nike*, 20-CV-905(PGG)(JLC), 2021 WL 128754, at *6 (S.D.N.Y. Jan. 14, 2021) (noting, on motion to dismiss trademark infringement claim, "dictionaries and encyclopedias may be consulted"), *report and recommendation adopted*, 2021 WL 2207451 (S.D.N.Y. Feb. 16, 2021).

1125(a); (2) Federal Trademark Infringement under 15 U.S.C. § 1114; (3) New York Unfair Competition; (4) Violation of New York's Deceptive and Unfair Trade Practices Act; and (5) Unjust Enrichment.  Plaintiff's claims are all predicated on the Series' title "Down to Earth with Zac Efron."  Cmpt. ¶¶ 33,37-39, 47, 54, 58, 62.

## III.    LEGAL STANDARD UNDER RULE 12(b)(6)

Under Fed. R. Civ. P. Rule 12(b)(6), a plaintiff's complaint must allege "sufficient factual matter" to "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (emphasis added); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Instead, plausibility depends on whether "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 663 (emphasis added).  Thus, a plaintiff "must provide the grounds upon which [its] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (internal quotation marks and citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, allegations showing a "mere possibility of misconduct" are insufficient.  *Iqbal*, 556 U.S. at 679. In determining whether a complaint states a "plausible" claim under Rule 12(b)(6), "matters of which a court may take judicial notice" may also be considered by the Court (*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007)), including the episodes of the Series and the Podcasts.  *See* fns. 5-7 and accompanying text, *supra*.

Disposition of this case at the pleading stage under Rule 12(b)(6) is particularly apt because, as discussed in greater detail below, Plaintiff's claims against the Series carry a chilling effect on Defendants' constitutionally protected rights under the First Amendment.  *Medina*, 2016

7

WL 3906714, at *4 ("The First Amendment protects defendants' right to artistic expression by extinguishing the claims plaintiff has brought in this action."); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*, 868 F. Supp. 2d 172, 177-84 (S.D.N.Y. 2012); *see also Baugh v. CBS, Inc.*, 828 F. Supp. 745, 752-53 (N.D. Cal. 1993) ("Summary disposition is particularly favored in cases involving First Amendment rights"); *Rebellion Developments Ltd. v. Stardock Entm't, Inc.*, No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013) ("Courts are cognizant of vindicating First Amendment protections through early dispositive motions to avoid chilling speech.").

## IV.    THE ELEMENTS OF PLAINTIFF'S CLAIMS

To plead federal Lanham Act trademark infringement and unfair competition claims under 15 U.S.C. §§ 1114 and 1125(a), "the plaintiff must (1) demonstrate that its mark is protected, and (2) 'that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with the plaintiff's goods.'" *1-800 Contacts, Inc. v. JAND, Inc.*, __ F. Supp. 3d __, 2022 WL 2316181 *3 (S.D.N.Y. 2022) (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009)).  As for Plaintiff's pendant claims under New York law for trademark infringement, unfair competition, and unjust enrichment, the pleading elements of these claims "'mirror the Lanham Act claims'" except that "a viable common law claim for unfair competition requires an additional showing of bad faith." *Id.*, 2022 WL 2316181 *8 (quoting *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 250 (S.D.N.Y. 2018)); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 637 (S.D.N.Y. 2008) (dismissing unjust enrichment claim for same reasons that unfair competition and Lanham Act claims were dismissed).

## V.    LEGAL ARGUMENT

### A.    THE SNACK BAR MARK LACKS PRIORITY AS A MATTER OF LAW

To start with, the registered Snack Bar Mark is not protectable against the Series because the Complaint expressly pleads that Plaintiff lacks priority as to this mark.  It is basic that the rights of a trademark owner are dependent on priority of use.  *ITC Ltd. v. Punchgini, Inc*., 482 F.3d 135, 146 (2d Cir. 2007) ("[O]ne of the fundamental premises underlying the registration provisions in the Lanham Act is that trademark rights flow from priority and that priority is acquired through use."); *Haggar Int'l Corp. v. United Co. for Food Indus. Corp*., 906 F. Supp. 2d 96, 105 (E.D.N.Y. 2012) ("Plaintiff must show priority of right over defendants in order to be entitled to relief.").

Here, Plaintiff's Complaint alleges that the Series was first distributed to the public by Defendants on July 10, 2020.  *See* Cmpt., ¶ 27.  But Plaintiff's Trademark Registration for the Snack Bar Mark was not issued until over a year later, on December 13, 2021, based on a claimed first use in commerce of the mark by Plaintiff on October 22, 2021 – 15 months after the Series premiered.  *Id*., Ex. 2 (Trademark Registration Certificate for the Snack Bar Mark).  Accordingly, Plaintiff's claims based on the Snack Bar Mark must be dismissed.

### B.    PLAINTIFF'S FEDERAL CLAIMS ARE BARRED UNDER *ROGERS v. GRIMALDI* AND CASES FOLLOWING *ROGERS*

It is well-established under the *Rogers* test that the titles of entertainment works such as the Series are fully protected by the First Amendment (*see*, *e.g*., *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65-66 (1981)),[9] and that such First Amendment protections limit the reach of the

---

[9] "Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee."  *Schad*, 452 U.S. at 65-66 (emphases added).

Lanham Act in lawsuits arising from the titles of expressive works. *See Rogers*, 875 F.2d at 1000.

Such protections are necessary because:

> Titles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an integral element of the filmmaker's expression as well as a significant means of marketing the film to the public…. Consumers of artistic works thus have a dual interest: They have an interest in not being misled and they also have an interest in enjoying the results of the author's freedom of expression. For all these reasons, the expressive element of titles requires more protection than the labeling of ordinary commercial products.

*Rogers*, 875 F.2d at 998. Thus, the Court in *Rogers* held "the Lanham Act does not apply to titles of artistic works 'unless the title [1] has no artistic relevance to the underlying work whatsoever' or [2] 'explicitly misleads as to the source or the content of the work.'" *Medina*, 2016 WL 3906714, *4 (quoting *Rogers*, 875 F.2d at 999). The purpose of this two-pronged *Rogers* test is to "strike a 'balance' between 'the public's interest in free expression' and 'protecting the public against flagrant deception[.]'" *Brown v. Electronic Arts, Inc.,* 724 F.3d 1235, 1244-45 (9th Cir. 2013) (hereinafter, "*Electronic Arts*") (internal brackets omitted; quoting *Rogers*, 875 F.2d at 999).

As a result, courts routinely grant Rule 12(b)(6) motions to dismiss based on the *Rogers* test, including in claims based on the titles of expressive works. *See e.g., Medina*, 2016 WL 3906714, at *6 (applying *Rogers* to dismiss trademark claims that the title of an eight-episode film series entitled "Loisaidas" allegedly infringed plaintiff's trademark rights in the "Loisaidas" band name); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*, 868 F. Supp. 2d 172, 177-84 (S.D.N.Y. 2012) (applying *Rogers* to dismiss trademark claims against the motion picture "The Hangover: Part II"); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 605-06 (S.D.N.Y. 2014) (applying *Rogers* to dismiss trademark claims arising from the use of footage from the TV series "Soul Train"); *Hidden City Philadelphia*, 2019 WL 1003637, at *1 (applying *Rogers* to dismiss trademark claims that the title of the ABC website series "Hidden Philadelphia" infringed

the plaintiff's website "Hidden City Philadelphia"); *Brown*, 394 F. Supp. 3d at 441-44 (applying *Rogers* to dismiss trademark claims against documentary concerning singer Whitney Houston).

Here, for the reasons set forth below, the application of the *Rogers* test clearly mandates the dismissal of each of Plaintiff's claims. In fact, Plaintiff's pre-motion letter (ECF 41) does not even challenge the dismissal under *Rogers* of its claims based on the Iced Tea Mark, the Clothing Mark, and the Snack Bar Mark (which should also be dismissed for the reasons discussed above in Section V.A., *supra*). Regarding Plaintiff's claims based on the Podcast Mark, although Plaintiff has argued that the application of the *Rogers* test requires a further evaluation of the well-known "*Polaroid* test" factors under *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), even if the Court finds that this is true, the Podcast Mark claims are still subject to dismissal on the grounds discussed below.

### 1.    The Title "Down to Earth with Zac Efron" is Artistically Relevant

The first prong of the *Rogers* test evaluates whether the title of a work has "artistic relevance." *Rogers*, 875 F.2d at 999. This inquiry "ensures that the defendant intended an artistic – *i.e.*, noncommercial – association with the plaintiff's mark, as opposed to one in which the defendant intends to associate with the mark to exploit the mark's popularity and good will." *Brown*, 394 F. Supp. 3d at 442. This prong is satisfied if the defendant's use of the allegedly infringed mark was "not arbitrarily chosen just to exploit the publicity value of [the plaintiff's mark] but instead ha[d] genuine relevance to the [contents of the work]." *Rogers*, 875 F.2d at 1001; *see also Medina*, 2016 WL 3906714, at *5 (quoting *Rogers*). The threshold for "artistic relevance" is very low and is satisfied unless a title "has **no artistic relevance to the underlying work whatsoever**." *Brown*, 394 F. Supp. 3d at 442 (citing *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 178 and *Rogers*, 875 F.2d at 999) (emphasis added). Thus, "the level of artistic relevance of the trademark or other identifying material to the work merely must be above zero[.]"

11

*Electronic Arts*, 724 F.3d at 1243 (internal brackets omitted; quoting *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008)).

Here, the title, "Down to Earth with Zac Efron" is artistically relevant because the Series portrays Efron traveling across the Earth getting into the weeds of environmental conservation efforts while making this topic and himself accessible to viewers.  Thus, "Down to Earth with Zac Efron" has a double or even a triple meaning – Efron is "getting down"[10] with the Earth by immersing himself in topics "supportive" of conservation while also being a person who is "practical" and "unpretentious."  *See* Section II.C., *supra* (quoting Merriam-Webster Dictionary); *see also* Ex. "B" (episodes of the Series); *Medina*, 2016 WL 3906714, at *5 (finding title "Loisaidas" relevant to a work concerning the drug trade in Manhattan's Lower East Side).   As such, it cannot plausibly be alleged that the title of the Series was arbitrarily chosen just to exploit the alleged publicity value of Plaintiff's marks.  Rather, the title clearly has genuine relevance to the Series.  *See also Twentieth Century Fox TV. v. Empire Distribution, Inc.*, 875 F.3d 1192, 1198 (9th Cir. 2017) ("Because we cannot say that Fox's use of the 'Empire' mark 'has no artistic relevance to the underlying work whatsoever,' the first prong of the *Rogers* test is satisfied[.]").  Accordingly, the first prong of *Rogers* clearly is satisfied here.

### 2.      The Title "Down to Earth with Zac Efron" Is Not Explicitly Misleading

The second prong of the *Rogers* test asks if the use of the trademark or other identifying material "explicitly misleads" as to the source or the content of the work.  *Rogers*, 875 F.2d at 999.  "The relevant question is whether the defendant's use of the mark 'is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized' by

---

[10] The colloquial phrase to "get down" is defined to mean, among other things, "to give one's attention or consideration" to something.  *See* "get down," MERRIAM-WEBSTER, *available at* https://www.merriam-webster.com/dictionary/get%20down (last visited Oct. 26, 2022).

the plaintiff." *Brown*, 394 F. Supp. 3d at 443 (citing *Louis Vuitton Malletier S.A*, 868 F. Supp. 2d at 179 and quoting *Twin Peaks Prods., Inc. v. Pubs. Int'l, Ltd*., 996 F.2d 1366, 1379 (2d Cir. 1993)). The explicitly misleading prong is a high bar that requires the use to be an "explicit indication," "overt claim," or "explicit misstatement" about the source of the work. *Rogers*, 875 F.2d at 1001.

Notably, "mere use of a trademark alone cannot suffice to make such use explicitly misleading." *Electronic Arts*, 724 F.3d at 1245; *see also Rogers*, 875 F.2d at 1000. This is especially true as to the titles of entertainment works since they do not primarily function as source-identifiers: "'A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer.'" *Medina*, 2016 WL 3906714, at *5 (quoting *Mattel, Inc. v. MCA Records, Inc*., 296 F.3d 894, 902 (9th Cir. 2002)).

Here, it is not plausible that the Series' use of the common phrase "down to earth" is "explicitly misleading" so as to cause consumer confusion with Plaintiff's Marks. *See, e.g.*, *Medina*, 2016 WL 3906714, at *5 (holding that "Loisaidas" was a common slang term for people from the Lower East Side of Manhattan and therefore its use in a series title did not explicitly mislead as to any association with plaintiff's band of the same name); *Twentieth Century Fox*, 875 F.3d at 1199 ("Fox's *Empire* show, which contains no overt claims or explicit references to Empire Distribution, is not explicitly misleading, and it satisfies the second *Rogers* prong."). Indeed, the Series expressly disclaims any association with Plaintiff by including Defendants' own source-identifiers – the Series itself is titled "Down to Earth **with Zac Efron**" and includes film credits for Nacelle, Netflix, Ninjas, Efron, and Olien. *See Hidden City Philadelphia*, 2019 WL 1003637 *5 (holding that videos titled "Hidden Philadelphia" did not explicitly mislead viewers as to any

association with plaintiff, "Hidden City Philadelphia" when "the videos themselves appear on the 6ABC website, feature the ABC logo, and state they are presented by the Philadelphia Zoo").

In short, the application of the *Rogers* test clearly mandates the dismissal of all of the Plaintiff's claims against Defendants given that, as a matter of law, the title of the Series is artistically relevant and is not expressly misleading.

### 3.     Plaintiff's Claims are Not Saved by Footnote 5 of *Rogers*

In its pre-motion letter, ECF 41, Plaintiff suggested that while as to the Iced Tea Mark, the Clothing Mark, and the Snack Bar Mark the above analysis may be dispositive, the Podcast Mark should not be analyzed under the traditional *Rogers* test framework because: (1) *dicta* contained in footnote 5 of the *Rogers* decision states that: "This limiting construction [*i.e.*, the two-pronged *Rogers* test] would not apply to misleading titles that are confusingly similar to other titles.  The public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles." (*Rogers*, 875 F.2d at 999, fn. 5), and (2) the title of the Podcast is "Down to Earth" and it allegedly is infringed by the title of the Series.

Plaintiff's reliance on footnote 5 of *Rogers* is unavailing.  In the Second Circuit, numerous decisions have side-stepped application of *Rogers*' footnote 5 entirely while continuing to apply the *Rogers* test.  For example, in *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp*., Inc., 886 F.2d 490, 494-97 (2d Cir. 1989), the Second Circuit applied the *Rogers* test to vacate an injunction entered by the trial court based on findings that the cover of defendant's parody publication entitled "Spy Notes" supposedly infringed the plaintiff's publications entitled "Cliffs Notes."[11] *Accord Syler v. Woodruff*, 610 F. Supp. 2d 256 (S.D.N.Y. 2009) (relying on *Rogers* in

---

[11] Plaintiff may attempt to distinguish *Cliff Notes* as supposedly involving trade dress rather than title infringement claims.  But the Second Circuit itself construes *Cliff Notes* as a title infringement case.  *See Twin Peaks Prods.*, 996 F.2d at 1379 ("Although *Rogers* arose in the context of a title

denying plaintiff's motion for TRO in action arising from competing book titles both utilizing the phrase "Perfectly Imperfect"); *see also Hidden City Philadelphia*, 2019 WL 1003637, at \*1 (applying *Rogers* to dismiss trademark claims that the title of the ABC website series "Hidden Philadelphia" allegedly infringed website entitled "Hidden City Philadelphia"). In addition, the Ninth Circuit, while embracing the *Rogers* test, expressly rejected footnote 5 of *Rogers* outright as it "may be ill-advised or unnecessary." *Twentieth Century Fox*, 875 F.3d at 1197.

Additionally, several of the Second Circuit cases ignoring footnote 5 of *Rogers* have instead applied the *Rogers* test in conjunction with the eight-factor "*Polaroid* test" set forth in *Polaroid Corp.*, 287 F.2d at 495.[12] *See Twin Peaks Prods.,* 996 F.2d at 1379; *Lemme v. Nat'l Broad. Co., Inc.*, 472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007); *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992); *see also Girl Scouts of U.S. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 996 F.2d 1477, 1478 (2d Cir. 1993); *Medina*, 2016 WL 3906714, at \*4-5. Under these authorities, "the finding of likelihood of confusion must be **particularly compelling** to outweigh [Defendant's significant] First Amendment interest [under the *Rogers* test]." *Lemme*, 472 F. Supp. 2d at 446 (quoting *Twin Peaks Prods*., 996 F.2d at 1379) (emphasis added); *see also* Lynn M. Jordan & David M. Kelly, *Another Decade of Rogers v. Grimaldi: Continuing to Balance*

---

using a celebrity's name, we have applied it to the literary title 'Cliffs Notes,' a literary title apparently not containing the name of a real person, and certainly not of a celebrity.").

[12] The "*Polaroid* test" factors for likelihood of confusion are: "[1] [T]he strength of [the plaintiff's] mark, [2] the degree of similarity between the two marks, [3] the proximity of the products, [4] the likelihood that the [plaintiff] will bridge the gap, [5] actual confusion, [6] … defendant's good faith in adopting its own mark, [7] the quality of defendant's product, and [8] the sophistication of the buyers." *RiseandShine Corp. v. PepsiCo, Inc*., 41 F.4th 112, 119 (2d Cir. 2022) (quoting *Polaroid Corp. v. Polaroid Elecs. Corp*., 287 F.2d 492, 495 (2d Cir. 1961)).

*the Lanham Act with the First Amendment Rights of Creators of Artistic Works*, 109 TRADEMARK REP. 833, 852 (2019) (compiling cases).

For example, in *Twin Peaks Prods.*, the Court applied the *Rogers* test in conjunction with the *Polaroid* test in a case involving two allegedly confusing titles. The plaintiff alleged that its TV show titled "Twin Peaks" was infringed by a book titled "Welcome to Twin Peaks: A Complete Guide to Who's Who and What's What," which was a reference guide about the Plaintiff's show. 996 F.2d at 1370. Because the District Court failed to consider the defendant's First Amendment rights under *Rogers* in entering an injunction against the book, the Second Circuit reversed the decision – finding it clearly erroneous that the First Amendment had not been considered as there was "little question" that the title was artistically relevant to the defendant's book. *Id.* at 1379. On remand, the District Court was instructed to determine whether the book's title was explicitly misleading by evaluating the *Polaroid* factors in a manner accommodating the *Rogers* test. *Id.* at 1379-80. Specifically, the Second Circuit ruled that the plaintiff's showing of likelihood of confusion under the *Polaroid* test must be "**particularly compelling** to outweigh the First Amendment interest recognized in *Rogers*." *Id.* (emphasis added).

Here, Plaintiff's Complaint does not plausibly allege a "particularly compelling" likelihood of confusion under the *Polaroid* test based on the alleged infringement of the Podcast Mark. Under such circumstances, courts regularly assess the *Polaroid* test as a matter of law and grant motions to dismiss where a plaintiff has not pled – and cannot show – likelihood of confusion. *See Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 437-38 (S.D.N.Y. 2021) ("[W]here Plaintiff 'cannot possibly show confusion as to source or sponsorship'[,] claims can be dismissed as a matter of law."); *Gayle v. Hearst Commc'ns, Inc.*, No. 19 CV 4699-LTS-DCF, 2021 WL 293237, at *4 (S.D.N.Y. Jan. 28, 2021) (granting motion to dismiss under *Polaroid* test where

16

"Plaintiff … failed to plead facts sufficient to allege plausibly the requisite risk of customer confusion…."); *Louis Vuitton Malletier S.A*., 868 F. Supp. 2d at 183 ("[W]here the court is satisfied that the products or marks are so dissimilar that no question of fact is presented" dismissal at the pleading stage is appropriate.) (quoting *Pirone v. MacMillan, Inc*., 894 F.2d 579, 584 (2d Cir. 1990)); *see also 1-800 Contacts, Inc.,* 2022 WL 2316181 at *3 (granting dismissal under Rule 12(c) pursuant to the same legal standard as for motions under Rule 12(b)(6)); *Weight Watchers Int'l, Inc. v. Noom, Inc*., 403 F. Supp. 3d 361, 377-380 (S.D.N.Y. 2019) (applying *Polaroid* factors in granting Rule 12(b)(6) motion to dismiss on nominative fair use grounds).

Here, Plaintiff's Complaint does not plausibly allege a "particularly compelling" likelihood of confusion under the *Polaroid* test based on the alleged infringement of the Podcast Mark. Nor can Plaintiff do so because, among other things, (a) the Podcast Mark is weak; (b) Plaintiff and Defendants use "Down to Earth" differently and through different media; and (c) Defendants use "down to earth" in its regularly understood, dictionary meanings – and credit its producers at the end of each episode – thereby eliminating any potential consumer confusion regarding the Series.

### a.    Plaintiff's Podcast Mark Is Weak

The first *Polaroid* factor examines the strength of the claimant's mark. *RiseandShine Corp.*, 41 F.4th at 119. "[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." *Id.* This is based on "either or both of two components: (1) the degree to which [the mark] is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace." *Id.*

Here, Plaintiff's Podcast Mark is weak because "Down to Earth" is a common-place phrase that is being used in its ordinary dictionary meanings – *i.e.*, to communicate that the Podcast is "practical" and "unpretentious" while being "supportive" of the earth – just as the phrase is defined in the Merriam-Webster Dictionary. *See* Section II.C., *supra*; *see also RiseandShine Corp.*, 41

F.4th at 120-21 ("When a mark so clearly evokes the claimed virtues of the product it references, that mark … is weak under the trademark law").  Tellingly, Plaintiff has not pleaded **any** facts plausibly showing that the Podcast Mark has high levels of "public recognition in the marketplace." *Id*. at 119.  To the contrary, "[i]n a 'crowded' field of similar marks, each member of the crowd, is relatively 'weak' in its ability to prevent use by others in a crowd." *Id*. at 123 (quoting J.T. McCarty, *McCarthy on Trademarks and Unfair Competition*, § 11:85, at 11-163 (4th ed. 2001)); *see also Lemme*, 472 F. Supp. 2d at 447-48 ("extensive third-party use of [a] term … suggest[s] that [a] mark is not particularly distinctive in the marketplace.").   Here, the USPTO records reveal an extremely crowded field of similar marks.  *See* Aronoff Decl., Exs. "C" to "I." Specifically, **there are over 50 "live" third-party registrations of "Down to Earth" trademarks, including for such product categories as nutritional foods, newsletters, travel-related equipment, pillows, tiles, and wine**.  *Id*.   Moreover, Plaintiff's recent effort to lessen the field by seeking cancellation on the grounds of abandonment of a third-party registration of "Down to Earth" for, among other things, tea-based beverages and snack bars, was flatly **denied** by the TTAB.  *See* Aronoff Decl., ¶ 11 and Ex. J at pp. 2, 16.  In addition, even apart from these prior third-party registrations, Plaintiff also cannot plausibly plead that it has a strong mark given the crowded field of **other podcasts** using the "Down to Earth" mark that **pre-date** Plaintiff's alleged first use of the mark for its podcast.[13]  Thus, Plaintiff has not and cannot plausibly allege a "particularly compelling" showing of likelihood of confusion under the first factor of *Polaroid*.

---

[13] *See e.g.,* "Down to Earth Podcast" *available at* https://www.downtoearthpodcast.com/episodes (last visited Oct. 26, 2022) (podcast dating back to Mar. 27, 2018); "Down to Earth: Cornell Conversations" *available at* https://anchor.fm/down-to-earth-cornell (last visited Oct. 26, 2022) (podcast dating back to Aug. 29, 2018); "Down to Earth: The Planet to Plate Podcast" *available at* https://www.stitcher.com/show/down-to-earth-a-planet-to-plate-podcast (last visited Oct. 26, 2022) (podcast dating back to July 18, 2018).

### b.      **The Parties' Marks are Dissimilar and Their Goods Are Not Proximate**

The second and third *Polaroid* factors, respectively, look at the degree of similarity between the parties' marks and the proximity of the products at issue.  *RiseandShine Corp.*, 41 F.4th at 119.  As these issues are often intertwined, "[i]t is appropriate to consider together … the second and third *Polaroid* factors." *Hasbro Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988). "The comparison of the marks is an inquiry designed to determine the 'general impression conveyed to the purchasing public by the respective marks.'"  *Id*. (citation omitted).  "The [proximity] factor considers whether, based upon commercial proximity of competitive products, consumers may be confused as to the products' source." *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F. Supp. 2d 356, 365 (S.D.N.Y. 2003).  The relevant confusion in one in which "consumers mistakenly assume one product is associated with the manufacturer of the other." *Id*. For example, in *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993), the Second Circuit affirmed the dismissal on a Rule 12(b)(6) motion of the plaintiff's claim that the defendant's "Parent's Digest" magazine infringed the title of plaintiff's trademarked "Parents" magazine due, in part, to the inclusion of the additional words "Ladies' Home Journal" above the phrase, "Parent's Digest."  *Id*. at 1078.

Here, the parties' marks are dissimilar, and their products are not proximate.   Plaintiff's podcast is entitled "the Down to Earth podcast."  *See* Ex. "A."  But the Series is titled "Down to Earth **with Zac Efron**."  *See* Ex. "B" (emphasis added).  The inclusion of the phrase, "with Zac Efron" in the Series' title (and the omission of the word "podcast") vitiates Plaintiff's claim that there is likelihood of confusion – as does the facts that the Series is found only on Netflix, identifies itself as "A Netflix Original Series," and credits its producers as the source of the show at the end of each episode.  *See* Ex. "B"; s*ee also 24 Hour Fitness USA, Inc.,* 277 F. Supp. 2d at 365 (finding no likelihood of confusion between the parties' "24 Hour Fitness" and "24/7 Fitness" marks); *see*

*also*, *Energy Intel. Grp., Inc.*, 2009 WL 1490603, at *7 (dismissing on a rule 12(b)(6) motion, trademark claims that the title of the newsletter, "UBS Investment Research – Daily Oil News" infringed the plaintiff's registered trademark, "The Oil Daily"); *Medina*, 2016 WL 3906714, *5 (finding lack of potential confusion where "materials promoting the film prominently informed the reader that it was 'Executive Produced: Dame Dash & Kanye West,'" and thus plaintiff was not its source).  There is zero likelihood that any fan of the Podcast – and the level of popularity of the Podcast, if any at all, is not alleged in the Complaint – could possibly confuse it with the Series.  *Compare* Ex. "A" (the Podcast) *with* Ex. "B" (the Series).

Furthermore, Plaintiff's podcast and Defendants' Series are not proximate to each other. Plaintiff's podcast is an audio-only talk show hosted by Plaintiff's owners that is located on Plaintiff's website and podcast platforms.  *See* Ex. "A;" https://drinkdowntoearth.com/podcast/.[14] The Series, in contrast, is an elaborately produced multi-episode audio-visual documentary about travel and conservation starring a famous actor, Efron, and is located only on Netflix.  *See* Cmpt. ¶¶ 24, 27; Ex. "B;"   https://www.netflix.com/title/80230601.   In light of the vast differences between the Series and Plaintiff's podcast, Plaintiff has not plausibly alleged a "particularly compelling" showing of likelihood of confusion under the second and third factors of *Polaroid*.

---

[14] The Podcast is hosted by Plaintiff's co-owners and siblings Jonathan and Laurena Patarkatsi.  In each episode of the Podcast, Laurena Patarkatsi, who purports to be "enrolled in Naturopathic Medical School," typically interviews a different guest involved in the health and wellness industry. The Podcast has no focus on international travel.  Each episode often begins with Laurena Patarkatsi identifying Plaintiff's iced tea drinks as the Podcast's sole sponsor and Jonathan Patarkatsi reciting the Podcast's catchphrase that the sibling duo will "spill the tea on all things health and wellness related."  *See* Ex. "A."

### c.    The Remaining *Polaroid* Factors Weigh in Defendants' Favor

The remaining *Polaroid* factors examine the likelihood of bridging the gap, evidence of actual confusion, the junior user's intent in adopting the mark, quality of the junior user's product, and the sophistication of the relevant consumer group. *RiseandShine Corp.*, 41 F.4th at 119. Here, Plaintiff has not and cannot plausibly allege a "particularly compelling" showing of likelihood of confusion under any of these factors.

*First*, "bridging the gap" refers to "the likelihood that a senior user will enter the junior user's market, or that consumer will perceive the senior user as likely to do so." *Girl Scouts of the United States of Am. v. Boy Scouts of Am.*, No. 18 CIV. 10287 (AKH), 2022 WL 1047583, at *8 (S.D.N.Y. Apr. 7, 2022). Plaintiff's Complaint does not allege any efforts by Plaintiff to "bridge the gap" by transforming its podcast into an episodic audio-visual documentary series on Netflix or any other screened media platform. *See e.g., id.* ("Girl Scouts does not, and has no plans to, allow boys to be members.... Even if the relevant gap between Girl Scouts and Boy Scouts is small, it is undisputed that there remains a gap.").

*Second*, as to "actual confusion," while Plaintiff's Complaint mouths these words as an empty legal conclusion (*see* Cmpt., ¶ 33), such conclusory allegations fail to factually and plausibly allege a "particularly compelling" showing of likelihood of confusion. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Further, Plaintiff's allegations of "actual confusion" are implausible because each episode of the Series identifies itself as "A Netflix Original Series" and credits its producers as the source of the show at the end of each episode. *See* Ex. "B;" *see also Medina*, 2016 WL 3906714, *5 (likelihood of confusion obviated by TV show credits).

*Third*, Defendants' use of the phrase "down to earth" as a play on words to describe the content of the Series does not indicate any bad faith motive to associate the Series with Plaintiff's podcast. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 119 (2004)

("[A]s to plaintiff's trademark claim, '[t]he use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product") (citing *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528 (1924)).  Moreover, Plaintiff's Trademark Registration for the Podcast Mark expressly states that Plaintiff first began using its mark in commerce on April 23, 2020 (*see* Cmpt., Ex. 3), and the Complaint alleges that the Series was first streamed by Defendants on July 10, 2020 – less than three months later.  *See* Cmpt., ¶ 27.  Importantly, there is no allegation in the Complaint that within this short three-month period, Plaintiff's Podcast achieved a level of success such that Defendants would want to ride on its coattails.  In fact, the Complaint does not even allege that Defendants knew of the Podcast before the Series premiered on Netflix, less than three months after Plaintiff allegedly first used its Podcast Mark in commerce.[15]

*Fourth*, "[a] marked difference in quality . . . tends to reduce the likelihood of confusion in the first instance."  *Savin Corp v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004).  Here, the Complaint does not plead that the quality of Defendants' Series relative to Plaintiff's Podcast increases the purported likelihood of confusion.  Nor can Plaintiff make this showing because the Series is a superior quality audio-visual work, rather than a mere audio recording, like the Podcast. *See Lemme*, 472 F. Supp. 2d at 451 ("Plaintiff does not dispute that NBC's nationally broadcast show 'is vastly superior in quality' to Plaintiff's local talk show.  Therefore, this factor clearly favors Defendant.").  This factor thus favors Defendants.

---

[15] In fact, because of the long lead times required to get a television series distributed, the title of the Series was actually selected by Defendants prior to the premiere of the Podcast.  This detail, however, is only provided for context – as this motion under Rule 12(b)(6) is limited to the pleadings and matters that are subject to judicial notice.

*Fifth*, and finally, Plaintiff cannot plausibly deny that the consumer audience for podcasts and documentary TV shows such as the Series is relatively sophisticated. Accordingly, this factor also weighs against likely confusion. *See Lemme*, 472 F. Supp. 2d at 451 ("[U]nsophisticated buyers are more likely to be confused and sophisticated buyers are less likely to be so.").

In short, after applying the relevant *Polaroid* factors, it is clear that Plaintiff's Complaint fails to plausibly allege a "particularly compelling" showing of likelihood of confusion between the title "Down to Earth with Zac Efron" and Plaintiff's Podcast Mark, such as to outweigh Defendants' First Amendment interests recognized in *Rogers*. *See Twin Peaks Prods*., *Inc*., 996 F.2d at 1379; *Lemme*, 472 F. Supp. 2d at 452. Accordingly, application of the *Polaroid* factors – which Defendants believe is unnecessary in the first place under *Rogers* – still warrants upfront dismissal of Plaintiff's Lanham Act claims in their entirety.

### C.   PLAINTIFF'S STATE LAW CLAIMS ARE ALSO BARRED BY *ROGERS*

In addition to Plaintiff's Lanham Act claims, the Complaint also alleges state law claims for Unfair Competition (Claim 3), Violation of New York's General Business Law sections 340 and 360-f (Claim 4), and Unjust Enrichment (Claim 5). Each of these claims is premised on the same allegedly infringing use of the mark "Down to Earth" in the title of the Series. *See* Cmpt. ¶¶ 53-64. "[T]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law." *Yankee Pub. Inc*., *supra*, 809 F. Supp. at 282; *see Louis Vuitton Malletier S.A*., *supra*, 868 F. Supp. 2d at 184 (dismissing plaintiff's claims under New York statute and common law claim of unfair competition "because they are based on the same permissible conduct as its Lanham Act claim.") (citing *Charles Atlas, Ltd. v. DC Comics, Inc*., 112 F. Supp. 2d 330, 341 (S.D.N.Y. 2000) and *L.L. Bean, Inc. v. Drake Publishers, Inc*., 811 F.2d 26, 32 (1st Cir. 1987)). As such, Plaintiff's pendant state law claims, whether framed as common law trademark claims, unjust enrichment, unfair competition, or

deceptive business practices, must also be dismissed because they are based on the same conduct as the alleged Lanham Act violations. *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 184.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's Complaint with prejudice.

Dated: November 7, 2022                    Respectfully submitted,


**FOX ROTHSCHILD LLP**

*/s/ David Aronoff*
David Aronoff (admitted pro hac vice)
Joshua Bornstein (admitted pro hac vice)
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
(310) 598-4150

*Counsel for Defendants Zac Efron, Darin Olien, The Nacelle Company, and Ninjas Runnin' Wild Productions, Inc.*


**DAVIS WRIGHT TREMAINE LLP**

*/s/ Amanda B. Levine*
Rachel Strom
Amanda B. Levine
1251 Avenue of the America, 21st Floor
New York, New York 10020
(212) 489-8230

*Counsel for Defendant Netflix, Inc.*