USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOWN TO EARTH ORGANICS, LLC,

                            Plaintiff,

   -against-

ZAC EFRON, DARIN OLIEN, NETFLIX, INC. THE NACELLE COMPANY, NINJA RUNNIN' WILD PRODUCTIONS, INC., and JOHN DOES 1-10 INCLUSIVE,

                           Defendants.

No. 22-cv-06218 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Down to Earth Organics, LLC ("DTE" or "Plaintiff") brings this action against Defendants Zac Efron, Darin Olien, Netflix Inc., The Nacelle Company, and Ninjas Runnin' Wild Productions, Inc. ("Defendants") for producing, marketing, and distributing the documentary series "Down to Earth with Zac Efron" (the "Series"). Plaintiff asserts claims for (1) False Designation of Origin pursuant to 15 U.S.C. § 1125(a); (2) Federal Trademark Infringement pursuant to 15 U.S.C. § 1114; (3) unfair competition under New York Law; (4) violation of New York's Deceptive and Unfair Practices Act, N.Y. Gen. Bus. Law §§ 340, 360-f; and (5) unjust enrichment. (ECF No. 13.)

      Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 46.) For the following reasons, Defendants' motion is GRANTED.

# BACKGROUND

The following facts are drawn from the allegations in the Complaint ("Compl.," ECF No. 13), which are assumed true for the purposes of this motion. In consideration of Defendants' motion, the Court also considers documents filed in certain of Plaintiff's proceedings before the United States Patent and Trademark Office ("USPTO"), the Series, and Plaintiff's trademarks and their associated products. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.") (internal quotation marks and citation omitted); *see also Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 176 n.6 (S.D.N.Y. 2012) (considering the allegedly infringing work because it was referred to in the complaint and integral to plaintiff's claims in making its determination on a motion to dismiss) (citation omitted).

Plaintiff engages in various forms of media production, including producing health-related podcasts on Internet websites and through various social media channels as well as manufacturing and selling bottled health-focused iced teas and clothing under the Down to Earth title and brand. (Compl. ¶ 6.) Specifically, Plaintiff exclusively holds the following valid federal and state common law trademarks under the USPTO: clothing (the "Clothing Mark"), Serial No. 87553039; fruits, nuts, and snack bars (the "Snack Bars Mark"), Serial No. 87866779; and podcasts, transmission of podcasts, and entertainment services through media on health, wellness, lifestyle, and travel (the "Podcast Mark"), Serial No. 87866779.[1] (*Id.* ¶¶ 19-21, 36.) Plaintiff has operated and offered

---

[1] In its Complaint, Plaintiff alleges that it manufactures and sells "bottled health-focused iced teas" in connection with the DTE brand. (Compl. ¶ 6, 18), but otherwise does not allege that it owns a trademark for those products. In its Opposition papers, Plaintiff includes the trademark certificate for the sale of fruit and herb-infused iced teas,

products under its trademarks since 2018, offering a variety of products ranging from fruit and herb-infused bottled teas to T-shirts to podcasts (the "DTE Products"). (*Id.* ¶ 18.) Plaintiff aired its first podcast on health, wellness, nutrition, lifestyle, hydration, meditation, and travel on April 23, 2020. (*Id.* ¶ 22.) Since then, Plaintiff has made available online 65 podcasts on the same issues. (*Id.* ¶ 23.)

On July 10, 2020, years after Plaintiff launched its multi-faceted business, Defendant Netflix premiered "Down to Earth with Zac Efron," an eight-episode online series focused on wellness and travel. (*Id.* ¶ 24-25, 27.) Defendants are involved in the production and distribution of the Series, which stars Defendant Zac Efron. (*Id.* ¶ 26.). In conjunction with the Series, Efron also launched marketing campaigns using the Series to cross-promote Nature Valley snack bars on his personal Instagram account. (*Id.* ¶ 30.) Because Plaintiff offers dried fruit and nut mixes on its website within its Snack Bars Mark, Plaintiff claims Efron's cross-promotional campaign, which at the time of the filing of the Complaint had more than five million views, "is intended to create a Down to Earth brand by Defendant Efron that infringes upon and dilutes [Plaintiff's] Marks, including the Snack Bars Mark." (*Id.*)

Plaintiff alleges that Defendants used the Marks intentionally and without authorization. (*Id.* ¶ 34.) Plaintiff claims that in using the "Down to Earth" mark, Defendants have created "actual confusion" between Plaintiff's podcast and the Series. (*Id.* ¶ 33.) Plaintiff further argues both itself and its Marks are "being tarnished, blemished and hurt" by the inaccurate and potentially fraudulent health and wellness claims made in the Series. (*Id.*)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to

---

Serial No. 88094119 (the "Iced Tea Mark"). (Pl. Opp. at 4-5; Ditcher Decl., Ex. 1.) The Iced Tea Mark does not seem to be put at issue here, however.

3

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiff alleges that the Series infringes on Plaintiff's Clothing Mark and Podcast Mark (collectively, the "Marks") in violation of the Lanham Act and related state causes of action.[2] (Compl. ¶¶ 35-64.) Defendants seek to dismiss the entirety of Plaintiff's Complaint.[3]

**I.      Plaintiff's Lanham Act Claims**

   *A. Applicable Law*

Section 32 of the Lanham Act protects trademark owners against the commercial use of

---

[2] Although not entirely clear in its Complaint, Plaintiff's causes of action appear limited to its Clothing Mark, Serial No. 87553039, and Podcast Mark, Serial No. 88858959. (*See* Compl. ¶ 36.) Accordingly, the Court will limit its analysis to the Clothing Mark and Podcast Mark. Regarding the Snack Bars Mark, Defendants argue that the Court should dismiss Plaintiff's claims regarding the Snack Bars Mark because it lacks priority of use. (Defs. Mot. at 9.) Specifically, Defendants note that while Plaintiff's Trademark Registration for the Snack Bars Mark was not issued until December 13, 2023 based on Plaintiff's first use in commerce of the mark on October 22, 2021, the Series was first distributed to the public on July 10, 2020. (*Id.* at 9.) Plaintiff claims that "there is no cause of action specific to the snack bar but rather it is part of an overall scheme to compete with and bridge the gap further in the infringement of Plaintiff's registered trademarks." (Pl. Opp. at 3 n.2.)

[3] On March 6, 2023, the parties filed their respective papers on the instant motion: Defendants' Joint Motion to Dismiss, with accompanying exhibits ("Defs. Mot.," ECF No. 46); Plaintiff's Memorandum of Law in Opp. ("Pl. Opp.," ECF No. 48); Declaration of John Dichter in Opposition ("Dichter Decl." ECF No. 47); and Defendants' Joint Reply Memorandum of Law ("Defs. Reply," ECF No. 49).

"any reproduction, counterfeit, copy, or colorable imitation of [another's] registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43 similarly prohibits the commercial use by any person of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).

Courts apply the same standard to assess claims for trademark infringement and false designation of origin under the Lanham Act. *See Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 228 (S.D.N.Y. 2022) (citing *Twentieth Century Fox Film Corp. v. Marvel Enterprises*, *Inc.*, 220 F. Supp. 2d 289, 296-97 (S.D.N.Y. 2002)). Specifically, to prevail under either statute, Plaintiff must demonstrate that (1) it has a valid mark meriting protection, and (2) Defendant's use of a similar mark is likely to cause consumer confusion. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216-17 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also 1-800 Contacts, Inc. v WhenU.com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (internal quotation marks omitted).

With respect to the first element, "[t]o be valid and protectable, a mark must be capable of distinguishing the products it marks from those of others." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir.1999). Thus, a mark's level of protection is determined by looking at its distinctiveness: while "[g]eneric marks are not protectable," "[f]anciful, arbitrary, and suggestive marks are deemed inherently distinctive" and

5

are therefore "automatically protected." *Id.* And even where a mark is not "inherently distinctive," it may be distinctive insofar as it has acquired a "secondary meaning" in the minds of consumers. *Star Indus., Inc. v. Bacardi & Co. Ltd.,* 412 F.3d 373, 381 (2d Cir. 2005) (citation and internal quotation marks omitted). Furthermore, "[a] certificate of registration with the [USPTO] is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc.*, 192 F.3d at 345; *see also Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection.").

As for the second element, courts in this Circuit employ the eight-factor balancing test set forth in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) to assess likelihood of confusion. *Louis Vuitton*, 868 F. Supp. 2d at 177. Those factors are: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior user's market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market. *Juicy Couture v. Bella Int'l Ltd.*, 930 F. Supp 2d 489, 498 (S.D.N.Y. 2013) (citing *Polaroid*, 287 F.2d at 495).

For titles of artistic and expressive works, the Second Circuit applies the *Rogers* balancing test. *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993). In *Rogers*, the Second Circuit established a two-prong balancing test to weigh "the public interest in avoiding consumer confusion" and the public interest in free expression. *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). The Lanham Act thus does not apply to an artistic work unless (1)

"the title has no artistic relevance to the underlying work whatsoever" or (2) if there is some artistic relevance, "the title explicitly misleads as to the source or the content of the work." *Id.* (citing *Rogers*, 875 F.2d at 999). Although initially applied to film titles containing celebrity names, the *Rogers* balancing test is now "generally applicable to Lanham Act claims against works of artistic expression." *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989).

    B.  Rogers, Jack Daniel's, *and the First Amendment*

Defendants argue that the Series is a work of entertainment protected by the First Amendment. (Def. Mem. at 4.)

As a threshold matter, following the Supreme Court's decision in *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 143 S. Ct. 1578, 216 L. Ed. 2d 161 (2023), the Court must determine whether the *Rogers* test applies. To do so, the Court assesses whether Defendants allegedly used Plaintiff's Marks "as a designation of source for [Defendants'] own goods." *Jack Daniel's*, 599 U.S. at 148. As articulated by the Supreme Court, it is the "cardinal sin" under the Lanham Act to "undermine" trademarks as source identifiers—"as things that function to 'indicate the source' of goods, and so to 'distinguish' them from ones 'manufactured or sold by others.'" *Id.* at 157-58 (citing 15 U.S.C. § 1127).

In *Jack Daniel's*, defendant designed a squeaky, chewable dog toy called "Bad Spaniels" which was designed to look like a bottle of Jack Daniel's whiskey. The Supreme Court held that despite the parodic use of plaintiff's trademark, the *Rogers* test was inapplicable because "[defendant] use[d] its Bad Spaniels trademark and trade dress as source identifiers of its dog toy." *Id.* at 159-60. To help courts distinguish between the use of a trademark as a source identifier versus for some other expressive function, the Supreme Court cited to the marks at issue in this Court's

7

decision in *Louis Vuitton*. *Id.* at 154, 157 (citing *Louis Vuitton*, 868 F.Supp.2d at 172). The Supreme Court explained it this way: a consumer is more likely to be confused when a luggage manufacturer uses a slightly modified Louis Vuitton LV logo to break into the suitcase market, as opposed to when a filmmaker uses a Louis Vuitton suitcase to convey something about a film's character. *Id.* at 157.

Here, Defendants are undoubtedly using "Down to Earth" simply to identify the subject matter and tone of the Series. *JTH Tax LLC v. AMC Networks Inc.*, No. 22 CIV. 6526 (PGG), 2023 WL 6215299, at *7 (S.D.N.Y. Sept. 25, 2023) (finding to the extent that defendants used plaintiff's "Liberty Tax" trademark in its television show *Better Call Saul*, it was only in the furtherance of the show's plot and not to identify the source of the show); *c.f. Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 138 (2d Cir. 2023) (affirming district court's decision to not apply *Rogers* where defendant used plaintiff's trademarks, including plaintiff's red and white logos, color scheme, and packaging, to brand its own products and sought to benefit from the plaintiff's goodwill).[4]

Accordingly, the Court will afford Defendants the heightened First Amendment scrutiny of the *Rogers* balancing test.[5]

---

[4] On February 10, 2024, Plaintiff submitted a notice of supplemental authority attaching the Second Circuit's decision in *Vans*, which interpreted and applied the *Jack Daniel's* decision for the first time. (ECF No. 50.) Contrary to Plaintiff's assertion, *Jack Daniel's* did not "substantially limit[] the scope and brea[d]th of *Rogers*." (*Id.* at 1). The Supreme Court itself stated that its opinion is "narrow" and its Justices "hold only that *Rogers* does not apply when the challenged use of a mark is as a mark." *Jack Daniel's*, 599 U.S. at 163. As noted above, the Court finds factual allegations in *Vans* distinguishable to the factual allegations in this action.

[5] Otherwise, Plaintiff argues the heightened First Amendment scrutiny of *Rogers* does not apply because the title of the Series is "confusingly similar" to Plaintiff's podcast title. (Pl. Opp. at 8 (citing *Rogers*, 875 F.2d at 999 n.5.) However, even where it has determined that a title is "confusingly similar," the Second Circuit has still held that *Rogers* had some relevance to assessing Lanham Act claims. *Cliff Notes*, 886 F.2d at 494-95. Courts in the Second Circuit has consistently applied *Rogers* and the *Polaroid* factors in assessing title-versus-title claims. *See Twin Peaks*, 996 F.2d at 1379; *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1077-80 (2d Cir. 1993). Beyond several out-of-circuit cases, Plaintiff relies on two district court cases in the Second Circuit, neither of which supports its argument. *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279 (S.D.N.Y. 1997) (applying the *Polaroid* factors, but still requiring plaintiffs to make a "particularly compelling" showing of likelihood of confusion in accordance with *Rogers*); *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 749 F. Supp. 1243, 1245 (S.D.N.Y. 1990), *aff'd*, 17 F.3d 38 (2d Cir. 1994) (decided before *Twin Peaks*, which applied *Rogers* more broadly to titles that did not include celebrity names).

*a. Artistic or Expressive Works*

Plaintiff argues the Series is commercial speech and therefore not entitled to First Amendment protection. (Pl. Opp. at 22-23.) Commercial speech is defined as "speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409, 121 S. Ct. 2334, 2337, 150 L. Ed. 2d 438 (2001).

The Series clearly does more than merely propose a commercial transaction. Plaintiff itself acknowledges that the Series "very clearly" pertains to raising awareness about leading a sustainable, holistic lifestyle to support one's personal health as well as the health of the planet. (Pl. Opp. at 5-6.) Accordingly, despite Plaintiff's allegations that the Series has sponsors and facilitates the sale of commercial products, the Series still constitutes non-commercial speech and an expressive work. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S. Ct. 777, 781, 96 L. Ed. 1098 (1952) (finding that motion pictures are a form of expression similar to books, newspapers, and magazines despite being published and sold for profit).

*b. Artistic Relevance*

For the first prong of the *Rogers* test, Defendants must show that the use of the trademark has any "artistic relevance to the underlying work whatsoever." *Rogers*, 875 F.2d at 999. The threshold for satisfying this requirement is "purposefully low." *Louis Vuitton*, 868 F. Supp. 2d at 178 (S.D.N.Y. 2012); *see Rogers*, 875 F.2d at 1001 (title of artistic work "surpasse[d] the minimum threshold of artistic relevance to the film's content" where the names of the film's central characters were not "arbitrarily chosen to just exploit [] publicity value" but had "a genuine relevance to the film's story.").

The title of the Series clearly meets this low threshold. "Down to Earth with Zac Efron" is genuinely relevant to the Series, which depicts celebrity Zac Efron, who also provides narration

9

throughout the Series, traveling to various countries to "search[] for healthy, sustainable living solutions for the planet." (Defs. Mot., Ex. B, Episode 1 – "Iceland" at 00:02:44.) The Court finds Defendants' analysis of the title persuasive—it is clear to both the Court and the public that Efron is exploring complex issues of environmental conservatism to promote conservationist ideas in a format that is appealing and accessible to the public. (*See* Defs. Mot. at 12.)

The only arguments Plaintiff lodges against this conclusion is that (1) Defendants themselves argue the phrase "down to earth" is minimally expressive and (2) the Series is merely "a vehicle to promote Zac Efron's business commercial venture."[6] (Pl. Opp. at 15-16, 24.) The latter argument is irrelevant, and given the low threshold to satisfy this requirement, the first argument is insufficient. Accordingly, the Court finds the title of the Series "Down to Earth with Zac Efron" has artistic relevance to the Series.

### c. Likelihood of Confusion

For the second prong of the *Rogers* test, the relevant question is whether Defendants' use of the trademark "is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized by [Plaintiff]." *Louis Vuitton*, 868 F. Supp. 2d at 179 (citing *Twin Peaks*, 996 F.2d at 1379). To satisfy this prong, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks*, 996 F.2d at 1379. In assessing this prong, the Second Circuit applies the *Polaroid* factors. *Id.*

At the outset, upon reviewing Plaintiff's podcast and the Series, it is highly unlikely that

---

[6] In raising the latter argument, Plaintiff does so in the context of arguing that Defendants are using its Marks as a source identifier. Specifically, Plaintiff argues "Defendants' use of 'Down to Earth' is nothing more than a method to identify Zac Efron's latest business venture." (Pl. Opp. at 23-24.) As discussed above, a source identifier indicates the source of a product, such as the size and shape of a bottle of Jack Daniel's whiskey. *Jack Daniel's*, 599 at 159-60.

the public would interpret the title "Down to Earth with Zac Efron" as denoting the source, publisher, or producer of the product as Plaintiff. Plaintiff does not allege, nor could it, that Defendants implied or suggested that Plaintiff produced, sponsored, or otherwise had any involvement in the Series—when a viewer begins to watch the Series, the first title card indicates the Series as "A Netflix Original Series" and the credits at the end of each episode clearly identifies the producers of the Series, which includes Efron and his co-host Defendant Darin Olien. Accordingly, Plaintiff has failed to allege that Defendants' use of "Down to Earth" in the title of the Series is explicitly misleading.[7] *See Medina*, 2016 WL 3906714, at *5 (title of express work not explicitly misleading where plaintiff's complaint did not contain allegations that the trademark holder produced the allegedly infringing expressive work and where the promotion materials for the expressive work prominently identified defendants as producers).

The *Polaroid* factors do not weigh in Plaintiff's favor either. Before the Court reaches any other factor, Plaintiff relies heavily on its assertion that Defendants' use of "Down to Earth" in the title of the Series has caused "actual confusion." (Pl. Opp. at 21-22.) However, Plaintiff's Complaint contains only conclusory allegations that the Series has caused actual confusion and mislead consumers. Plaintiff alleges that (1) there has been "actual confusion as to the origin between DTE's and [the Series] as a result of the unauthorized use of the [Marks] by Defendants" and (2) "the inaccura[te] and potentially fraudulent nature of the health and wellness information"

---

[7] The Court notes that courts have applied *Rogers* within the framework of confusion *as to Defendants' artistic work*. *Louis Vuitton*, 868 F. Supp. at 179 (collecting cases). The Lanham Act is narrowly applied in those situations where "trademarks are used to dupe consumers into a buying a product they mistakenly believe is sponsored by the trademark owner." *Id.* at 180 (internal quotations marks and citation omitted). Therefore, the relevant inquiry here is whether consumers may be confused as to whether Plaintiff sponsors or otherwise endorses the Series. Thus, Plaintiff's argument that the addition of "with Zac Efron" to the "Down to Earth" mark in the Series's title "creates the explicitly misleading impression that Mr. Efron endorses DTE products and/or sponsors DTE's entertainment podcasts" (Pl. Opp. at 20) is irrelevant. *See, e.g., Louis Vuitton*, 868 F. Supp. 2d at 181 (plaintiff, a producer of luxury goods, failed to allege the type of confusion that could overcome *Rogers* protection when plaintiff alleged that consumers may be confused into believing that plaintiff approved the use of its luxury bag in defendant's film).

disseminated in the Series "tarnished, blemished, and hurt" Plaintiffs' Marks. (Compl. ¶ 33.) The only additional details Plaintiff provides is that Defendants "have used words and descriptions" in promoting, selling, and distributing the Series which falsely and misleadingly indicate that the Series is affiliated with, associated with, authorized, and/or sponsored by Plaintiff. (Compl. ¶¶ 40, 47-49.) Plaintiff fails to allege (1) how the Series's use of the Marks is confusing or misleading, (2) who has been confused or mislead by the Series's use of the Marks, (3) in what ways those individuals have been confused or mislead, and so on. These bare-bones allegations, which Plaintiff fails to even elaborate on in its Opposition, are insufficient to plausibly state a claim that Defendants have infringed on its Marks.

Plaintiff also fails to meaningfully address the *Polaroid* factor regarding "the strength of the mark" beyond conclusory assertions. Plaintiff confusingly states that Defendants are unable to challenge the strength of the Marks because the title of the Series is alleged to "intentionally exploit" the "Down to Earth" trademark. (Pl. Opp. at 20.) As noted by Defendants, Plaintiff does not challenge Defendants' argument that "down to earth" is a common phrase and otherwise fails to allege any facts regarding the distinctiveness, popularity, or even exclusivity of its "Down to Earth" mark. *See Museum of Mod. Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 373 (S.D.N.Y. 2018) (The inquiry regarding the strength of the plaintiff's mark focuses on the distinctiveness of the mark, or more precisely, its tendency to identify the goods as coming from a particular source.") (citations and internal quotation marks omitted). This factor also weighs against Plaintiff.

Touching on the remaining *Polaroid* factors, Plaintiff alleges that (1) the titles of Plaintiff's podcast and the Series are "identical"; (2) the Series and Plaintiff's podcast share the same themes and branding regarding a holistic lifestyle, and therefore they compete in the same marketplace, (3) Efron and the Series's website promotes clothing, snack bars, and competing podcasts which

shows evidence of "bridging the gap"; and (4) there is a lack of quality of the content distributed in the Series despite Defendants representing themselves as more sophisticated or better than Plaintiff. (Pl. Opp. at 20-21.) Taken together, these arguments are insufficient to plausibly allege a likelihood of confusion.

First, the Court disagrees that the Marks and the title of the Series are "identical." To analyze the similarity of marks under the *Polaroid* test, courts "must analyze the marks' overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective [consumers]." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 316 (S.D.N.Y. 2010) (citing *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d, 532, 537 (2d Cir.2005)) (cleaned up). While "at first blush, the use of the same words appears to weigh in favor of similarity, the use of the same words is far from dispositive." *Medici Classics Prods., LLC v. Medici Grp., LLC*, 683 F. Supp. 2d 304, 311 (S.D.N.Y. 2010) (cleaned up). With these principles in mind, despite the two titles sharing the phrase "Down to Earth," the Court finds the Series and Plaintiff's Marks dissimilar as the marks are presented to consumers in the marketplace in dissimilar ways. When viewing the branding associated with the Series and the Marks, they are wholly dissimilar. Plaintiff's Down to Earth brand logo for its products use the initials "DTE" or the phrase "Down to Earth," with the words stacked on top of each other, in white lettering and placed over two overlapping leaves.[8] The title of the Series also uses white lettering but with a bolder font and is generally placed beside or layered over Efron's likeness.[9]

Moreover, the Court agrees with Defendants that the addition of "with Zac Efron" reduces

---

[8] As Plaintiff has incorporated it by reference in its Complaint, the Court considers Plaintiff's website: https://drinkdowntoearth.com/.
[9] As Plaintiff has incorporated it by reference in its Complaint and incorporates it in its Opposition, the Court considers the website for the Series: https://downtoearthzacefron.com.

13

the likelihood of confusion—the Series heavily centers celebrity Efron as the star and narrator of the show, and he is on the forefront of its promotional materials. Thus, the Court finds it unlikely that a consumer listening to Plaintiff's podcast, in which the hosts identify themselves as "sibling duo Jonathan and Laurena" (*see* Defs. Mot., Ex. A) may be confused into thinking Plaintiff sponsors, endorses, or is otherwise involved in a Netflix original Series with Efron as the prominent star. This factor weighs in favor of Defendants.

Moving to the third *Polaroid* factor, the Court is also unpersuaded by Plaintiff's argument that because the two productions "share the same themes and branding" they are in competitive proximity. (Pl. Opp. at 20.) When determining "competitive proximity," a court assesses "the nature of the product themselves and the structure of the relevant market," including "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Cadbury Bevs., Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). The fact that the Series and Plaintiff's podcast both discuss topics relating to holistic and sustainable living is insufficient to put them within competitive proximity of one another. A 65-episode audio-only podcast generally available through various online channels and an eight-episode television series available through one separate and distinct online channel are not any more similar than the music videos and audio recordings of music at issue in *Medina*. 2016 WL 3906714, at *4-6. Accordingly, because "there is no overlap . . . between the channels through which the goods are sold," the Court again finds this factor in Defendants' favor. *JTH Tax*, 2023 WL 6215299 *12 (citing *Cadbury Bevs., Inc.*, 73 F.3d at 480).

Plaintiff's next two arguments regarding the quality of the products and the sophistication of the consumers fail to even the score. In its Complaint, Plaintiff alleges the Series has promoted snack bars as part of its marketing campaigns, which evidences Defendants' efforts to bridge the

14

gap, and that McGill University's Office of Science and Society has "ridiculed" the information in the Series as inaccurate and potentially fraudulent, which demonstrates the Series is of a lower quality than Plaintiff's podcast. (Compl. ¶¶ 30, 32; Pl. Opp. at 21.) First, the Court notes that again Plaintiff's Complaint is limited to the Clothing and Podcast Marks. (Compl. ¶ 36.) Second, the "bridge the gap" factor contemplates "the likelihood the *senior* user will enter the *junior* user's market in the future," or put another way, the likelihood or the consumer's perception of the likelihood that Plaintiff would enter Defendants' market of audio-visual documentaries. *JTH Tax*, 2023 WL 6215299 *12 (citing *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005)) (emphasis added). Plaintiff makes no factual allegations as to this possibility.

Finally, the *Polaroid* factor regarding the quality of a defendant's product "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *New York City Triathlon, LLC*, 704 F. Supp. 2d at 320. Here, Plaintiff argues the lower quality of the Series causes harm to Plaintiff. (Pl. Opp. at 21.) Strangely, given Plaintiff's argument that "it is *the quality of Plaintiff's content and products* that sets them apart from Defendants" (*id.* (emphasis in original)), this argument could be construed as undermining, rather than supporting, Plaintiff's claim of a likelihood of confusion between the Series and Plaintiff's podcast. Regardless, even construed in the light most favorable to Plaintiff, this argument only mildly weighs in Plaintiff's favor. The article, written in the style of a film review rather than an analytical assessment of the health information provided in the Series, is only one review as to the quality of the information within the Series. However, given that Defendant fails to substantively address this argument in its motion papers, the Court finds this factor weighs slightly in Plaintiff's favor. Overall, the *Polaroid* factors weigh overwhelmingly in favor of Defendants.

Contrary to Plaintiff's assertions, the *Rogers* test and *Polaroid* factors may appropriately be applied on a motion to dismiss, particularly "where the court is satisfied that the products or marks are so dissimilar that no question of fact is presented." *Medina*, 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (quoting *Louis Vuitton*, 868 F. Supp. 2d at 183). While Plaintiff is correct that allegations are deemed true on a motion to dismiss (*see* Pl. Opp. at 19 n.5), "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Iqbal*, 556 U.S. at 663). Plaintiff's conclusory allegations are insufficient to state a plausible claim of likelihood of confusion, much less a "particularly compelling" one. The Court therefore dismisses Plaintiff's claims for trademark infringement and false designation of origin as to Plaintiff's Marks.

## II.     Plaintiff's State Law Claims

As Plaintiff's federal claims arising under the Lanham Act are dismissed with prejudice, the Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims for unfair competition, violation of New York's Deceptive and Unfair Practices Act, and unjust enrichment are also dismissed.

## III.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, Plaintiff indicates that it is "happy" to "elaborate further on the actual

confusion and likelihood of further confusion." (Pl. Opp. at 19 n.5.) With the expectation that any amended pleadings would include more factual allegations and not merely more conclusory statements, the Court grants Plaintiff leave to file an Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED. Plaintiff is granted leave to file an Amended Complaint on or before April 29, 2024. Plaintiff is advised that the Amended Complaint will replace, not supplement, its Complaint, and so any claims that it wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff not file an Amended Complaint by this date, Plaintiff's claims will be dismissed with prejudice. In the event Plaintiff files an Amended Complaint on or before April 29, 2024, Defendants are directed to answer, or otherwise respond to, the Amended Complaint on or before May 20, 2024.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 46.

SO ORDERED:

Dated: March 31, 2024
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge